[Crim. No. 2565.   First Dist., Div. One.   June 6, 1949.]

THE PEOPLE, Respondent, v. ADOLPH CORDERO, Appellant.

J. Maxwell Peyser for Appellant.

Fred N. Howser, Attorney General, David K. Lener, Deputy Attorney General, Edmund G. Brown, District Attorney, and

Norman Elkington, Assistant District Attorney, for Respondent.

PETERS, P. J.—The defendant was charged, by an information, with an assault with a deadly weapon upon Albert C. Durand, and with two prior convictions. He admitted the two priors, and pleaded not guilty to the main charge. He was found guilty by a jury, and from the judgment entered upon the verdict prosecutes this appeal.

██ There is no doubt but that the evidence shows that defendant assaulted Durand, the basic question on this appeal being whether the evidence sustains the finding that a deadly weapon was used in such assault.

The assault occurred between 10:30 and 11 p. m. on May 19, 1948. Durand is a merchant seaman, and he had just returned to this port on that day. Early in the evening he and his wife, Viola, visited several bars where Durand, over a period of several hours, drank about six bottles of beer, and his wife consumed about three or four. Shortly after 10 p. m. they started home, but decided to drop in at Johnson's Restaurant located on Folsom Street near their residence, and have another bottle of beer. They arrived at the restaurant, which sells no hard liquor, at about 10:30 p. m., and seated themselves at the bar and ordered some beer. Both testified that neither was drunk nor adversely affected by the beer they had consumed, but defendant testified that, while Durand was not drunk, Viola was under the influence of liquor.

Defendant, then on parole, had arrived at the restaurant about an hour before the Durands, and before their arrival had consumed two bottles of beer. He was sober. When the Durands arrived, in addition to the defendant, the other persons in the restaurant were the proprietor Johnson, a waitress and her daughter, and apparently an unidentified customer. Durand testified that Viola went over to play the music box; that defendant accosted her, and began to talk to her in very "rough" language; that he, Durand, walked over to defendant and protested, and turned back to the bar; that thereupon defendant jumped on him from behind, and, with his fists, knocked him to the floor; that his eye and lip were cut from the blows; that Viola helped him up and assisted him to the front door, when he was again hit from behind and knocked unconscious. He was positive, as was his wife, that at no time did he strike defendant. His leg was broken in two places

and he was hospitalized from May 19th to June 28th. He did not know what had knocked him unconscious.

Viola generally corroborated this story. In addition, she testified that defendant called her a "stool pigeon," and cursed her in English, Spanish and Mexican; that when she started for the door with her husband she still had her bottle of beer in her hand; that defendant grabbed the bottle out of her hand; that as she and her husband tried to go out the door, defendant knocked her husband to the floor again with his fist; that as her husband tried to get up "Mr. Cordero took the bottle, just hit, like he said 'Kill him,' or whatever words he used. I got scared when he hit him with the bottle"; that she ran into the restaurant and called the police; that when she returned, defendant was kicking her husband. She answered certain other questions as follows: "Q. . . . when your husband first left the swinging door of Johnson's restaurant he was struck with a bottle? A. Yes. Q. How many times did the defendant strike with the bottle? A. He just took the bottle and threw it. The bottle bounced back off the wall of the restaurant, but he hit him with the bottle, the bottle knocked him out. Q. Where was he struck with the bottle at that time? A. The leg, hit him like that with the bottle (indicating). Q. That's what knocked him down? A. Yes."

Viola also testified that prior to the assault, on several occasions, she had met defendant and had talked with him while he was sitting in his automobile and she was passing by; that on such occasions he had acted "very nice"; that on several occasions defendant had parked his automobile immediately underneath the windows of her home in the early morning hours and that she hollered at him to move away, and threatened to call the police.

This was the case for the prosecution. It was directly contradicted by defendant and his witnesses. The defense witnesses were all friendly to defendant, and apparently the jury believed they colored their testimony in his favor. These witnesses, however, all admitted that the defendant struck the first blows. The proprietor of the restaurant testified that defendant told Durand that his wife was a "stool pigeon" and then knocked Durand to the floor. He did not see Durand hit defendant, and did not see defendant hit Durand with a beer bottle. The waitress and her daughter testified that defendant struck Durand with his fists, and both testified that after defendant had knocked Durand down Viola seized a beer bottle and backed defendant out of the restaurant. None

of these three witnesses, so they testified, saw what happened outside the restaurant. Defendant testified that he was in the restaurant talking to the waitress' daughter when the Durands arrived; that Viola approached and told the girl that defendant was "cheating on my wife and baby" (defendant was, in fact, unmarried, and had no children); that he objected, and Viola began to call him vile names; that he did not want any trouble, and started to leave the restaurant when Durand came up and struck him; that he struck back and knocked Durand back against the bar; that he then walked out of the restaurant; that Durand followed him and started hitting him; that he then knocked Durand down and walked away. He testified that at no time during the fight did he have a beer bottle in his hand, and denied kicking Durand.

A woman witness, a neighbor of defendant's, and who admitted going out with defendant on at least one occasion, testified that on the night in question she was walking her dog past the restaurant and saw what happened outside; that defendant did not hit Durand with a bottle or kick him while he was down; that when Durand fell to the street defendant walked away. Viola testified that no one was on the sidewalk and street near the premises during the melee outside the restaurant.

It is obvious that, if Mrs. Durand's story is to be believed, defendant committed an unprovoked assault on Durand with a beer bottle, which, used as club or a missile, constitutes a deadly weapon. The jury saw these parties and witnesses and elected to believe Mrs. Durand. We have no power to substitute our opinion of the facts for that of the jury where the evidence contains no inherent improbability. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Perkins,* 8 Cal.2d 502 [66 P.2d 631].) All conflicts must be resolved in favor of the verdict. (*People* v. *Rankin,* 10 Cal.2d 198 [74 P. 2d 71].) The jury is, of course, not required to believe the defendant or his witnesses. (*People* v. *Shaver,* 7 Cal.2d 586 [61 P.2d 1170].) Where there is substantial evidence to support the verdict, the appellate court must affirm. (*People* v. *Thomas,* 62 Cal.App.2d 416 [144 P.2d 853].) The weight and sufficiency of the evidence, the credibility of the witnesses, and the reasonable inferences to be drawn therefrom, are all matters for the jury to determine. (*People* v. *Latona,* 2 Cal. 2d 714 [43 P.2d 260]; *People* v. *Pianezzi,* 42 Cal.App.2d 270 [108 P.2d 685].)

The defendant attacks Mrs. Durand's testimony as being "too disjointed and contradictory to savor of credence." While her testimony is not as clear as might be desired, and while she is the only one who testified as to the use of the beer bottle by defendant, we cannot say that her story was inherently improbable. Indisputably, Durand's leg was broken in two places, requiring about six weeks' hospitalization. That is not the normal result of a simple assault.

Defendant also complains about the fact that the prosecution failed to produce the beer bottle, and argues that the only reason it was not produced must have been that no bottle could be found containing defendant's fingerprints. He also urges that the failure of the prosecution to present Durand's attending physician, and to produce the X rays, indicates that Durand's leg was not injured by a beer bottle. These are arguments that more properly should be, and undoubtedly were, presented in the trial court. ▆ The district attorney has the power to determine what evidence he desires to produce, and while his failure to produce available evidence may result in unfavorable inferences in the trial court, it is for the trier of the fact and not the appellate court to determine what weight should be given such inferences.

▆ It is also urged that the prosecutor was guilty of prejudicial misconduct in his cross-examination of defendant in reference to the two prior convictions admitted by him. The record shows that the defendant, in response to questions from the prosecutor, admitted a grand theft conviction in San Francisco in 1945 and service of time therefor in San Quentin, and also admitted a robbery conviction, and service of time, in Nevada. That was the only information elicited by the prosecutor. It was proper to impeach the witness in this fashion. When a defendant takes the witness stand, he waives the provisions of section 1025 of the Penal Code. (*People* v. *Granillo,* 140 Cal.App. 707 [36 P.2d 206]; *People* v. *Arnold,* 116 Cal. 682 [48 P. 803]; *People* v. *Rogers,* 94 Cal.App. 470 [271 P. 351].) As long as the prosecutor does not go beyond the fact of the prior convictions and the nature of the prior crimes committed, the questions are proper. (*People* v. *David,* 12 Cal.2d 639 [86 P.2d 811].) This rule applies even though such evidence may tend to prejudice the defendant in the eyes of the jury. (*People* v. *Williams,* 27 Cal.2d 220 [163 P.2d 692].)

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.