[Crim. No. 5169. In Bank. June 5, 1951.]

THE PEOPLE, Respondent, v. CLAUDE L. OSBORN, Appellant.

N. Lindsay South for Appellant.

Fred N. Howser and Edmund G. Brown, Attorneys General, and Clarence A.. Linn and Gail Strader, Deputy Attorneys General, for Respondent.

SPENCE, J.—Defendant was charged with the murder of Ejnar Thorwald Asmussen, which murder was alleged to have occurred in Fresno County on or about April 10, 1950. He pleaded not guilty and admitted a prior felony conviction in Washington of second degree assault. Upon a trial by jury, defendant was found guilty of first degree murder without recommendation. No motion for new trial was made and judgment was entered imposing the extreme penalty. This is an automatic appeal from such judgment. (Pen. Code, § 1239(b).)

Appellant contends that (1) the evidence was insufficient to sustain the judgment; (2) the trial court committed prejudicial error in admitting in evidence certain photographs; and (3) the trial court committed prejudicial error in making certain statements in answer to questions asked by the jurors. A review of the record, however, shows that these contentions cannot be sustained, and that the judgment should be affirmed.

The deceased, a frail man of·about ''60 years or past'' weighing about 125 pounds, lived alone in a cabin or ''dugout'' some 4 miles above Toll House in Fresno County. Appellant, a young man of about 35 years of age and a brickmason by trade, had previously served several years in the Army. There were no eyewitnesses to those acts of appellant which caused the death of the deceased. Appellant at first denied knowing the deceased and later told conflicting stories, but upon the trial he testified that he had inflicted the injuries upon the deceased on the day in question and had left the deceased tied in his cabin in the manner hereinafter described. His testimony, however, was to the effect that the injuries were inflicted in an altercation which had been started by the de-

ceased. All of the other testimony, however, clearly indicated that appellant inflicted the injuries upon the deceased in the perpetration of robbery. The only claim now made by appellant with respect to the alleged insufficiency of the evidence is that the "evidence from every witness that connected defendant with the fight stated that according to defendant's statement there was no intention on the part of defendant to kill."

The body of the deceased was found in a battered and decomposed condition on the floor of his cabin on April 20, 1950. The clothing consisted of a shirt and pants but no shoes or socks.. Deceased's hands were found to. be securely tied behind his back. The sheriff and coroner were summoned and pictures were taken at the scene. One of the pockets of deceased was turned partly inside out as if the man had been searched. The cabin was in complete disarray with the chair overturned, the mattress "turned back off" the bed, the "covers were all messed up" and "all of the cans" of food were open.

The autopsy surgeon testified that in his opinion the deceased had probably lived for some time after receiving his injuries, and that he had died several days before his body had been found. He further testified at length concerning the numerous injuries inflicted upon the deceased. His finding was that the terminal cause of death was coronary thrombosis, a clotting of the blood vessels within the heart. He summarized his testimony as follows: "the thing that really caused this man's death of course was the coronary thrombosis, contributed to by multiple bruises and abrasions, fractures of the 8th and 9th ribs on the right side, and fractures of the transverse process of the first and second lumbar vertebra, right side, and gangrenous changes of both hands listed due to the constriction of the rope on the wrists." With respect to the effect of the fractures of the ribs and vertebrae, he testified that it would have been extremely painful for deceased to have moved, or to have attempted to do so.

In view of those portions of appellant's testimony in which he admitted that he had inflicted the extensive injuries upon the deceased, it seems clear that the jury was not bound to believe those other portions of his testimony or of his prior statements to the effect that he had not intended to kill the deceased. Considering all of the evidence, the jury might well have concluded that appellant had intended to kill the deceased, and that he had left the cabin believing that deceased was in fact dead. Furthermore, the ques-

tion of whether appellant actually intended to kill the deceased is not of paramount importance in considering the sufficiency of the evidence here, in view of the other testimony showing that the injuries to the deceased which resulted in his death were inflicted by appellant in the perpetration of robbery. Thus it has been held that any killing, intentional or otherwise, committed in the perpetration of one of the felonies specified in section 189 of the Penal Code, constitutes murder of the first degree. (*People* v. *Valentine,* 28 Cal.2d 121, 135-136 [169 P.2d 1]; *People* v. *Denman,* 179 Cal. 497, 498-499 [177 P. 461]; *People* v. *Milton,* 145 Cal. 169, 171-172 [78 P. 549].)

It appears from the testimony of several witnesses that appellant inflicted the injuries while perpetrating the robbery of the deceased. Samuel Donabedian testified that appellant had told him that he knew a fellow in the mountains who had a practice of flashing money around and that he would go up and take it away from him. Later, appellant told this witness that he had seen the old man; that he got in a fight with him; that he got a couple of dollars and left him tied up. William Osborn, appellant's half brother, testified that after the discovery of the body appellant told him that he hit and robbed the old man and got $2.38. Walter Hankel testified that appellant told him that he had robbed an old man in the mountains after beating him up and tying his hands, stating ''Yes, I really beat the hell out of him.'' In view of this evidence, which was no doubt believed by the jury, there can be no question concerning the sufficiency of the evidence to sustain the verdict of first degree murder. In this connection, it should be stated that appellant does not claim that there was any error in the giving or refusing of instructions relating to the degrees of murder.

Appellant's second contention, relating to the admission, over objection, of the photographs of the body of the deceased taken at the scene, is likewise without merit. These pictures showed the tied hands and the condition of the body, including the nature of certain wounds inflicted, all of which showing was relevant to the question of whether a criminal agency had brought about the death of the deceased. Such pictures have consistently been held to be admissible in evidence in murder trials. (*People* v. *Green,* 13 Cal.2d 37, 43 [87 P.2d 821]; *People* v. *Goodwin,* 9 Cal.2d 711, 714 [72 P.2d 551]; *People* v. *Shaver,* 7 Cal.2d 586, 591-592 [61 P.2d 1170]; see, also, note in 159 A.L.R. 1414.)

■ The final contention of appellant relates to the statements of the trial court given in answer to questions asked by the jurors when they returned to the courtroom during the course of their deliberations. One juror stated that there was a ''question that bothers us considerably. We wonder in case of life imprisonment if a person can be paroled in a length of time.''

After the trial court and counsel engaged in a discussion, which was not heard by the jury, the following proceedings were had in the presence of the jury:

''THE COURT: I assume now that it is perfectly clear in the minds of the jury in case they find the defendant guilty of murder of the first degree that they can bring one of two verdicts. That is clear, isn't it? ·The question is the meaning or effect of the verdict which recommends life imprisonment, is that it?

''JURYWOMAN WHITE: That is it.

''THE COURT: Well of course you understand on that verdict, that is mandatory on me. I would have no discretion, and on sentence the sentence would be imprisonment for life. I am sorry I am not allowed to explain that any further. The general rule is that in a case that the jury are not concerned with the penalty. They are concerned with the penalty in a case charging murder, because if they find the defendant guilty of murder in the first degree they must fix the penalty. But I think I understand your question, and I am afraid I am not allowed to answer it. Is there anything else now? Any other way I can be helpful to you, or any further instructions read?

''JUROR MADDOX: Would it be possible, your Honor, for the jury to bring a verdict in murder of the first degree, imprisonment for life without eligibility for parole?

''THE COURT: A provision as you suggest wouldn't be binding on anybody. It wouldn't be binding on—it would be of no effect. Does that answer your question?

(Juror nods.)

''THE COURT: You have the option of the two verdicts. The recommendation ''We recommend life imprisonment'' is binding on me. That is the only sentence that I would be allowed to pronounce. Any addition to that is not binding. I can answer that very definitely, that any addition to that—you have the form of verdict. Anything that you would write on there in addition to that is of no legal effect.''

Appellant does not claim that the trial court's answers

constituted incorrect statements of the law, and he cites no authority to show that the trial court erred in answering the questions in the manner above set forth. It is understandable that jurors, who are charged with the duty of fixing the penalty in the event that they find a defendant guilty of first degree murder, should be interested in knowing the nature and effect of the penalties which they may impose; and neither reason nor authority indicates that the trial court should be prohibited from enlightening the jurors when questions are asked upon that subject. We therefore conclude that the trial court did not err in making said statements in response to the jurors' questions.

In conclusion, we may state that a review of the entire record shows that appellant was accorded a fair trial, and that there was ample evidence to sustain the judgment entered.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.