Filed 6/4/26  P. v. Rusco CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>RODNEY JAMES RUSCO,<br><br>        Defendant and Appellant. | F089146<br><br>(Super. Ct. No. BF200712A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Nathan A. Coelho, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Charlotte Woodfork and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted defendant Rodney James Rusco of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and attempted criminal threats (*id.*, §§ 664/422) in connection with an altercation he had with a security guard and the trial court found true a prior serious felony allegation (*id.*, § 667, subd. (a)) and multiple aggravating circumstance allegations. (Undesignated statutory references are to the Penal Code.)

On appeal, defendant contends the trial court reversibly erred in failing to instruct the jury that attempted criminal threat requires a finding that the intended threat be sufficient under the circumstances to cause a reasonable person to be in sustained fear. Defendant also asserts insufficient evidence supports his conviction for assault with a deadly weapon. In his opening brief, defendant also challenged the court's order that the amount of victim restitution was to be determined by the probation department, but he abandons this claim in his reply brief.

We affirm the judgment.

## FACTUAL BACKGROUND

Defendant was charged with assault with a deadly weapon (§ 245, subd. (a)(1), count 1) and attempt to commit criminal threats (§§ 664/422, count 2). As to each count, it was further alleged that defendant had previously been convicted of a serious or violent felony within the meaning of sections 667, subdivisions (e) through (j) and 1170.12, subdivisions (a) through (e). Multiple aggravating circumstances were also alleged as to each count including: the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (rule 4.421(a)(1) of the California Rules of Court; all rule references are to the California Rules of Court); defendant was armed with or used a weapon at the time of the commission of the crime (rule 4.421(a)(2)); defendant has engaged in violent conduct that indicates a serious danger to society (rule 4.421(b)(1)); defendant has prior convictions as an adult or sustained petitions in juvenile delinquency proceedings that are

2.

numerous or of increasing seriousness (rule 4.421(b)(2)); defendant has served a prior prison term or jail term under section 1170, subdivision (h) (rule 4.421(b)(3)); and defendant has had unsatisfactory performance on probation, mandatory supervision, postrelease community supervision or parole (rule 4.421(b)(5)).  As to count 2, it was further alleged that defendant had suffered a prior serious or violent felony conviction pursuant to section 667, subdivision (a).

**Prosecution Evidence**

Jordan M. was working as a security guard at a shopping center on August 10, 2024 where he would patrol the parking lot.  Jordan noticed defendant standing where the sidewalk meets the parking lot.  Defendant was drinking from a bottle of wine; he had a plastic bag in the other hand.  Jordan had previously told defendant on multiple different days not to return to the property after receiving calls about him.  That day, Jordan asked defendant to leave.  Defendant was upset and had been drinking.  Jordan saw him drink from what appeared to be a white wine bottle in his hand.  Jordan could smell the odor of alcohol on defendant's breath and defendant's speech was slurred.  Defendant cursed at Jordan a couple of times and he was not cooperative.  Jordan testified defendant had "[v]ery rarely" been cooperative in the past.  Jordan called the police.  Defendant walked around the shopping center and Jordan followed him to make sure he left.  Defendant was yelling at Jordan and Jordan repeatedly told defendant to leave.

At some point, defendant reached in his pocket and Jordan "saw what appeared to be a blade of a pocketknife or knife of some sort."  Jordan also testified he saw the handle of what he believed to be a knife, but he did not actually see a knife.  As defendant was walking away from Jordan, he turned his head back, looked at Jordan who was five or six feet away, and said, "one cut and one stab and you're done."  Jordan understood the statement to mean defendant was threatening to stab or kill him given that defendant was reaching in his pocket and showing him what appeared to be the handle of a knife.

3.

Jordan testified he was not afraid. He explained that he encountered this frequently in his role as a security guard. He was "annoyed" and "[f]rustrated."

Jordan continued to follow defendant at a reasonable distance. Defendant set his things down and raised the wine bottle he was holding above Jordan's head "like he was going to smash the bottle over [his] head." Defendant had his thumb over the mouth of the bottle "so that way he didn't lose any of it" and his hand was around the neck of the bottle. Defendant approached Jordan. Jordan "wasn't sure what was going to happen" so he "put [his] arm up just in case." Defendant "tried to psych [Jordan] out with a lunge" and he half swung the wine bottle before pulling back immediately. Defendant's arm hit Jordan's forearm. Jordan testified he was not injured. Jordan also testified he believed defendant's threats were credible because he had dealt with defendant before and defendant was intoxicated. Jordan was in fight or flight mode; his heart was pumping. He thought defendant could possibly take his life or beat him up "pretty good." Police officers arrived about five minutes after the bottle incident.

Officer Curtis Kniffen responded to the scene. Other officers had detained defendant and Kniffen searched him. Kniffen removed a red kitchen knife from defendant's front left pocket.

Officer Kimberly Grimaldi also responded to the scene. She obtained a statement from Jordan and read defendant his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Referring to Jordan, defendant said, "He's a bitch." Grimaldi took photographs of the knife and wine bottle and booked them into evidence. The prosecution introduced a video recording of defendant being read his *Miranda* rights while he was in a police car at the scene and his statements to Grimaldi. The prosecution also introduced a video recording of the officer searching defendant's pockets, which shows the red knife that was recovered from defendant's person.

4.

**Section 1118.1 Motion**

The defense moved for entry of a judgment of acquittal after the prosecution rested. The defense argued that Jordan "indicated he was not in any sort of sustained fear," with regard to count 2 for criminal threats and Jordan only saw the small portion of the handle of what he assumed to be a knife. Defense counsel argued such evidence casts doubt on Jordan's state of mind and if he was in fear. With regard to count 1, counsel argued that the specific intent requirement for assault with a deadly weapon had not been met as Jordan indicated it was his belief defendant intended to "psych him out, … not actually strike him with the bottle."

With regard to count 2, the prosecutor argued he had "proven all of the elements with the exception of the threat causing fear or causing the victim to be in sustained fear for his safety, but that's what the attempt [section] 422 is there [*sic*]." With regard to count 1, the prosecutor argued there was evidence to support a perspective that "holding a bottle over a head and moving it towards the victim's head would indicate that [defendant] intended to hit the victim in the head with the glass bottle, and so much so the victim actually put his hand up to block him from such an attack."

The trial court denied the section 1118.1 motion, concluding there was sufficient evidence for the jury to make a determination.

**Verdict and Sentencing**

The jury found defendant guilty as charged of assault with a deadly weapon (§ 245, subd. (a)(1), count 1) and attempt to commit criminal threats (§§ 664/422, subd. (a), count 2). In a bifurcated proceeding, the trial court found true the allegation that defendant had previously been convicted of a serious or violent felony within the meaning of sections 667, subdivision (e) and 1170.12, subdivisions (a) through (e). The

court found true the aggravating circumstances alleged pursuant to rule 4.421(a)(1), (2),(b)(2)–(5).[1]

The trial court denied defendant's motion to strike his prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. The court sentenced defendant to the upper term of eight years on count 1. It struck the section 667, subdivision (a) prior serious felony enhancement pursuant to section 1385. The court sentenced defendant to the middle term of two years on count 2 but it found count 2 was part of a continuing incident and, accordingly, it stayed imposition of the sentence on count 2 pursuant to section 654.

## DISCUSSION

### The Alleged Error in the Attempted Criminal Threat Instructions Was Not Prejudicial

Defendant asserts the trial court prejudicially erred in failing to instruct the jury that attempted criminal threat requires a finding not only that the defendant had an intent to threaten but also that the intended threat be sufficient under the circumstances to cause a reasonable person to be in sustained fear pursuant to *People v. Chandler* (2014) 60 Cal.4th 508 (*Chandler*). We conclude the alleged error was harmless beyond a reasonable doubt.

#### Relevant Factual Background

Here, the trial court instructed the jury with CALCRIM Nos. 460 and 1300 with regard to the crime of attempted criminal threat (count 2). Pursuant to CALCRIM Nos. 460 and 1300, the court instructed:

> "To prove … defendant is guilty of this crime, the People must prove, one, that … defendant took a direct but ineffective step towards

---

[1] The trial court found not true the aggravating circumstance allegation that the conduct was violent pursuant to rule 4.421(b)(1).

6.

committing the crime of criminal threat, and two, … defendant intended to commit the criminal threat.

"A direct step requires more than merely planning or preparing to commit a criminal threat or obtaining or arranging for something needed to commit a criminal threat. A direct step is one that goes beyond planning or preparation and shows that a person is putting his plan into action. A direct step indicates a definite and unambiguous intent to commit a criminal threat. It is a direct movement towards the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt.

"A person who attempts to commit a criminal threat is guilty of attempted criminal threat even if, after taking a direct step towards committing the crime, he abandons further effort to complete the crime or if his attempt failed or is interrupted by someone or something beyond his control. On the other hand, if a person freely and voluntarily abandons his plan before taking a direct step towards committing a criminal threat, then that person is not guilty of attempted criminal threat.

"To decide whether … defendant intended to commit a criminal threat, please refer to the separate instruction I'll give you on that crime. In just a minute, I'll read you the definition of what a criminal threat is.

"[D]efendant may be guilty of attempt even if you conclude the criminal threat was actually completed. [¶] This is now the definition of criminal threat.

"[D]efendant is charged in [c]ount 2 with the crime of attempted criminal threat, in violation of … [s]ection[s] 664/422. [¶] The elements required to prove a criminal threat by the People are as follows:

"One, … defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Jordan [M.]; two, … defendant made the threat orally; three, … defendant intended that his statement be understood as a threat; four, the threat was so clear, immediate, unconditional and specific that it communicated to Jordan … a serious intention and the immediate prospect that the threat would be carried out; five, the threat actually caused Jordan … to be in sustained fear for his own safety; and, six, Jordan['s]… fear was reasonable under the circumstances.

"Someone commits an act willfully when he does it willingly or on purpose.

7.

"In deciding whether the threat was sufficiently clear, immediate, unconditional, and specific, consider the words themselves as well as the surrounding circumstances.

"Someone who intends that his statement be understood as a threat does not have to intentionally carry out the threatened act.

"Great bodily injury means significant or substantial physical injury. It's an injury that is greater than minor or moderate.

"Sustained fear means fear for a period of time that is more than momentary, fleeting, or transitory."

The prosecutor discussed the elements of the completed crime of criminal threats. With regard to the fifth element—whether the threat actually caused Jordan to be in fear for his own safety—the prosecutor admitted this element had not been met given that Jordan testified he was not afraid; so, the offense of criminal threat was not complete, which "is where the attempt comes into play." Nevertheless, the prosecutor argued, with regard to the sixth element of the completed offense of criminal threat, that if Jordan had been afraid, "his fear would be reasonable. You have somebody agitated, cussing him out, hand on a knife and says, one stab, you are done, that would put any reasonable person in fear."

**Standard of Review**

"The trial court has a sua sponte duty to instruct the jury on the essential elements of the offense." (*People v. Merritt* (2017) 2 Cal.5th 819, 824.) "When the jury is 'misinstructed on an element of the offense … reversal … is required unless we are able to conclude that the error was harmless beyond a reasonable doubt.' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 348.) "The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration." (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

**Applicable Law**

Section 422, subdivision (a) provides that "[a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for their own safety or for their immediate family's safety, shall be punished .…"

"[A] defendant properly may be found guilty of attempted criminal threat whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action." (*People v. Toledo* (2001) 26 Cal.4th 221, 230; *Chandler*, *supra*, 60 Cal.4th at p. 514.) "The crime of attempted criminal threat encompasses situations where a defendant intends to commit a criminal threat 'but is thwarted from completing the crime by some fortuity or unanticipated event." (*Chandler*, at p. 515, quoting *Toledo*, at p. 232.) For example, " 'if a defendant, … acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant may be found to have committed the offense of attempted criminal threat.' " (*Chandler*, at p. 515, quoting *Toledo*, at p. 231.) "[T]he intent required for an attempted criminal threat is a specific intent 'to threaten to commit a crime resulting in death or great bodily injury with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and immediate prospect of execution so as

9.

to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety.' " (*Chandler*, at p. 516, quoting *Toledo*, at pp. 230–231.)

In *Chandler*, the California Supreme Court clarified that "the crime of attempted criminal threat requires not only proof of a subjective intent to threaten but also proof that the intended threat under the circumstances was sufficient to cause a reasonable person to be in sustained fear." (*Chandler*, *supra*, 60 Cal.4th at p. 511.) Accordingly, *Chandler* held, "when a defendant is charged with attempted criminal threat, the jury must be instructed that the offense requires not only that the defendant have an intent to threaten but also that the intended threat be sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Id.* at p. 525.) Nevertheless, *Chandler* found that "whether or not the instructions adequately conveyed this element of the offense, reversal [was] not warranted because any error was harmless beyond a reasonable doubt." (*Ibid.*) That is, the *Chandler* court concluded "no reasonable juror could have failed to find [the] defendant's threats sufficient under the circumstances to cause a reasonable person to be in sustained fear," noting neither party suggested the defendant could be convicted of the offense based on his subjective intent to threaten and the defense did not contest the reasonableness of the victims' fear. (*Ibid.*)

Sustained fear occurs over "a period of time 'that extends beyond what is momentary, fleeting, or transitory.' " (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) "Fifteen minutes of fear … is more than sufficient to constitute 'sustained' fear for purposes of … section 422." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156, fn. omitted; see *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1348–1349.)

**Analysis**

Here, the parties agree that the given instructions omitted the element of the crime of attempted criminal threat that the intended threat was sufficient under the circumstances to cause a reasonable person to be in sustained fear. However, they

disagree about whether the omission was prejudicial. Defendant argues there were "several objective facts that could have indicated to the jury that [defendant's] statement would not cause a reasonable person to be in sustained fear under the circumstances," including that defendant did not take the knife out of his pocket; he only had his hand on it for a few seconds; he was walking away from Jordan when he made the statement; and he made no other threatening statements or otherwise escalated his language. He contends a jury could have concluded Jordan did not clearly see the knife, weighing against a finding of "reasonable sustained fear." He also asserts Jordan's history with defendant and the lack of intervention by bystanders suggests a reasonable person would not have experienced sustained fear. The People respond that any instructional error was harmless beyond a reasonable doubt given the evidence presented and arguments by counsel. They note, as in *Chandler*, neither party argued the jury could convict defendant of attempted criminal threats based only on his subjective intent to threaten. The People also argue, as in *Chandler*, the evidence did not suggest the jury convicted defendant based on his subjective intent to threaten. We agree with the People that the alleged instructional error was harmless beyond a reasonable doubt.

Here, defendant threatened to stab Jordan while looking at Jordan face-to-face and while placing his hand on a knife in his pocket. We conclude, as the *Chandler* court did, that "no reasonable juror could have failed to find defendant's threats sufficient under the circumstances to cause a reasonable person to be in sustained fear." As in *Chandler*, neither party suggested the defendant could be convicted of the offense based on his subjective intent to threaten. (See *Chandler*, *supra*, 60 Cal.4th at p. 525.) Indeed, the prosecutor expressly argued the circumstances of the threat would have put a reasonable person in fear and the defense did not argue or suggest the threats would not cause a reasonable person sustained fear. (See *id*. at p. 525.)

Defendant relies upon *People v. Jackson* (2009) 178 Cal.App.4th 590 to argue the instructional error was prejudicial. In *Jackson*, the defendant was acquitted of the

11.

substantive offense of making a criminal threat and convicted of attempted criminal threat. (*Id*. at p. 593.) On appeal, the defendant claimed the trial court erred by failing to instruct the jury sua sponte that, "in order to find him guilty of attempted criminal threat, it must find that 'it would have been reasonable for a person to have suffered sustained fear as a result of the threat under the circumstances of this case.' " (*Id*. at p. 595.) The *Jackson* court agreed the jury instructions were erroneous because the reasonableness element was included *only* in the substantive offense instruction (as here) and *not* in the attempt instruction. (*Id*. at pp. 596–597, 599–600.) In holding the error was prejudicial, the *Jackson* court explained: "In finding [the] defendant not guilty of the completed crime but guilty of attempt, the jury must have found that [the] defendant made the ... statements [attributed to him] and that he intended them to be taken as threats but that one or both of the last two elements of the completed crime was missing, namely that [the victims] did not suffer sustained fear or that their fear was unreasonable under the circumstances. The instruction allowed the jury to find [the] defendant guilty of attempted criminal threats under either of these factual scenarios. And the evidence would support either scenario. The jury might not have believed [the victims] when they stated they actually feared for their lives. Or, the jury might have concluded, since [the victims] were safely inside the house with a telephone to call the police while [the] defendant sat out front, or since [the] defendant's threats were so outlandish, that [the] defendant's statements could not reasonably have caused the victims to suffer sustained fear. The latter scenario is legally insufficient to support conviction of an attempted criminal threat and the former scenario is sufficient only upon finding that a reasonable person could have suffered fear in those circumstances, something the jury was not asked to decide." (*Id*. at p. 600.)

Unlike *Jackson*, however, the evidence in this case does not support a conclusion the threat was insufficient under the circumstances to cause a reasonable person to be in sustained fear. Here, defendant was mere feet away from Jordan with his hand on a knife

12.

when he threatened to stab Jordan, face-to-face. Such circumstances are in contrast to the circumstances in *Jackson* where the victims were safely inside a house with a telephone from which they could call police and the defendant's threats could be deemed outlandish. (See *Chandler*, *supra*, 60 Cal.4th at p. 526 [reasoning, in contrast to the circumstances in *Jackson*, the victims testified defendant "made explicit threats that he was going to kill each of them, and defendant made the threats while face-to-face with the victims"].) That, here, Jordan had encountered defendant before and defendant's back was turned to Jordan at the time he turned around and made the threat did not undermine the gravity and reasonable effect of his statement, particularly given the evidence reflected defendant had his hand on a knife while threatening to stab Jordan. Rather, "defendant's threats were sufficient under the circumstances to cause a reasonable person to be in sustained fear—indeed, defendant did not argue otherwise at trial—and no reasonable juror could have concluded otherwise." (*Chandler*, at p. 526.)

We reject defendant's first contention.

## Sufficient Evidence Supports Defendant's Conviction for Assault with a Deadly Weapon

Defendant next asserts insufficient evidence supports his conviction for assault with a deadly weapon. For the reasons that follow, we disagree.

### Standard of Review

On appeal, the relevant inquiry governing a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055.) The reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value upon which a reasonable trier of fact could find

the defendant guilty beyond a reasonable doubt. (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

"The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) It is the jury, not the appellate court, which must be convinced of a defendant's guilt beyond a reasonable doubt. (*Ibid*.) If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*Ibid*.)

We "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis … is there sufficient substantial evidence to support" ' the jury's verdict." (*Ibid*.)

### Applicable Law

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) The crime of assault with a deadly weapon is defined as "an assault upon the person of another with a deadly weapon or instrument other than a firearm." (§ 245, subd. (a)(1).)

An assault "requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790).) That is, "it is a defendant's action enabling him to inflict a present injury that constitutes the actus reus of assault. There is no requirement that the injury would necessarily occur as the very next step in the sequence of events, or without any delay." (*People v. Chance* (2008) 44 Cal.4th 1164, 1172). " 'There need not be even a direct attempt at violence; but any indirect preparation towards it, under the circumstances

mentioned, such as drawing a sword or bayonet, or even laying one's hand upon his sword, would be sufficient.' " (*Ibid*.) Thus, "when a defendant equips and positions himself to carry out a battery, he has the 'present ability' required by section 240 if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken, and even if the victim or the surrounding circumstances thwart the infliction of injury." (*Ibid*.) " '[A] conviction for assault with a deadly weapon does not require proof of an injury or even physical contact' [citation], but limited injury or lack of injury may suggest that the nature of the object or the way it was used was not capable of producing or likely to produce death or serious harm.' " (*In re B.M.* (2018) 6 Cal.5th 528, 535.)

For purposes of section 245(a)(1), "a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' " (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028–1029.) If the weapon is not inherently deadly, "the object alleged to be a deadly weapon must be used in a manner that is not only 'capable of producing' but also ' "*likely to produce* death or great bodily injury." ' " (*In re B.M.*, *supra*, 6 Cal.5th at p. 533.)

**Analysis**

Defendant argues Jordan's testimony was the only evidence of the alleged assault and it established defendant half swung the bottle to intimidate Jordan. Defendant asserts such evidence was insufficient for a reasonable juror to find defendant committed an act that, by its nature, would probably result in the application of physical force to Jordan. He argues the evidence was insufficient to show he used the bottle as a deadly weapon or that he could have caused great bodily injury by swinging the bottle in the manner he did. We disagree with defendant's contentions.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude sufficient evidence supports defendant's conviction for assault with a deadly weapon. That is, a rational trier of fact could conclude that defendant raising a glass wine bottle

over Jordan's head and half swinging it at Jordan such that their arms made contact established that defendant had the present ability to commit a violent injury on Jordan. (See *In re Raymundo M.* (2020) 52 Cal.App.5th 78, 83–84 [finding sufficient evidence to support assault with deadly weapon conviction where juvenile raised knife but was never within striking distance of victim and he did not make stabbing or slashing motions with the knife]; *People v. Yslas* (1865) 27 Cal. 630, 633–634 [evidence sufficient to establish assault with a deadly weapon where defendant approached victim with raised hatchet but the victim escaped injury by running away and defendant never closed the distance between himself and the victim or swung the hatchet].) And, a reasonable juror could conclude that defendant "actually used the [glass bottle] in a way capable of producing, and likely to produce death or great bodily injury" (*Raymundo M.*, at p. 88), in that, if defendant had swung the bottle down such that it made contact with Jordan's head or body, it could have caused great bodily injury or even death. (See *People v. Cordero* (1949) 92 Cal.App.2d 196, 199 ["bottle … used as club or a missile, constitutes a deadly weapon"]; see also *People v. Fagalilo* (1981) 123 Cal.App.3d 524, 532 [throwing of wine bottle at victims was sufficient to establish assault by means of force likely to produce great bodily injury].)

Accordingly, we reject defendant's contentions and conclude sufficient evidence supports defendant's conviction for assault with a deadly weapon.

**Challenge to Victim Restitution Order**

Here, the trial court ordered defendant "to pay restitution under [section] 1202.4[, subdivision ](f) in an amount to be determined by the probation department at the direction of the court to Jordan … for related losses. And also under 1202.4[, subdivision ](f)(2) to the Victim Compensation Fund."

In his opening brief, defendant argued the trial court's order that he pay victim restitution in an amount to be determined by the probation department was an abuse of

discretion because the court's order did not provide for a subsequent hearing. He also asked our court to hold the trial court's "delegation of the determination of the amount of victim restitution to the probation department to be invalid and interpret the order of the court below to be setting the amount of victim restitution under section 1202.4[, subdivision ](f) to zero dollars." The People responded the claim by defendant was premature and lacked merit. They noted the trial court could review any victim restitution amount before imposing such an order and, because no victim restitution amount was set, the record did not support the argument that the trial court improperly delegated its duties or failed to provide a hearing. On reply, defendant "concedes his arguments relating to error surrounding the determination of victim restitution."

"[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentence, the restitution order shall include a provision that the amount shall be determined at the direction of the court." (§ 1202.4, subd. (f).) " ' "Section 1202.4 does not, by its terms, require any particular kind of proof. However, the trial court is entitled to consider the probation report, and, as prima facie evidence of loss, may accept a property owner's statement made in the probation report about the value of stolen or damaged property." ' " (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 96, quoting *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1320.)

Here, the trial court stated it would order restitution set in an amount to be determined by the probation department *at the direction of the court* as it was permitted to by section 1202.4, subdivision (f). (See *People v. Lunsford* (1998) 67 Cal.App.4th 901, 903 ["The restitution order in this case complies with … section [1202.4, subdivision (f)] in that it 'directs' the Officer of Revenue Reimbursement to 'determine' the amount of victim restitution because the proper amount could not be ascertained at

17.

the time of sentence" and the defendant could seek judicial review pursuant to section 1202.4, subdivision (f)(1)].) Because defendant concedes there was no error with regard to this victim restitution order, we do not address it further.

## DISPOSITION

The judgment is affirmed.


                                             PEÑA, Acting P. J.

WE CONCUR:


DESANTOS, J.


HARRELL, J.