Filed 4/20/22  P. v. Huerta CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ARTURO HUERTA, <br><br> Defendant and Appellant. | F081569 <br><br> (Kern Super. Ct. No. BF136504A) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Larenda R. Delaini, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Detjen, J. and Peña, J.

## INTRODUCTION

In 2012, appellant Arturo Huerta was convicted after a jury trial of second degree murder and sentenced to 15 years to life.

In 2020, appellant filed a petition for resentencing pursuant to Penal Code[1] section 1170.95 and alleged his murder conviction was based on the felony-murder rule and/or the natural and probable consequences doctrine. The superior court denied the petition.

On appeal, his appellate counsel has filed a brief which summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) We affirm.

## FACTS[2]

Appellant rented a bedroom from Velia Alvarez. On April 17, 2011, Alvarez heard the sounds of an argument coming from appellant's room, and heard a woman's voice yelling, "[N]o, no, Arturo, please. I moved with my daughter to 2nd Street." Alvarez then heard the sound of glass breaking and items being thrown around the room; she called the police.

When police arrived at the scene, they observed appellant pacing inside his room and evidence of blood on the rear door. The officers then entered the residence from the front and rear entrances, and found appellant standing motionless in the kitchen, covered in blood, and the body of Acamea Coy in appellant's bedroom. Coy's arms were tied with a necktie, and a scarf was tied around her face. Inside the room there was broken

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] Appellant's points and authorities in support of his petition, and his opening brief in this appeal, quote from the record and this court's opinion in his first appeal. Given this background, we take judicial notice of the appellate record and this court's nonpublished opinion in *People v. Huerta* (Oct. 23, 2014, F066497) for the factual and procedural background in this case. (Evid. Code, § 450, § 452, subd. (d), § 459; *In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2.)

As will be explained below, we provide the facts for background purposes but do not rely on this factual summary to resolve the issues presented in this appeal. (See §1170.95, subd. (d)(3).)

glass on the floor, a glass Cisco bottle, and blood on all of the walls. Appellant was subsequently arrested and charged with first degree murder.

The autopsy in the case was performed by Dr. Wallis, whose report listed four causes of death: sharp and blunt force trauma; asphyxia; cocaine intoxication; and sickle cell process. When Dr. Wallis was determined to be unavailable for trial, Dr. Shaker was named as the substitute pathologist and submitted a report stating that, based on his review of the file, the sole cause of death was exsanguination from sharp injuries. At trial, Dr. Shaker testified that he believed the victim's cause of death to be exsanguination due to sharp injuries.

Appellant testified in his own defense and stated that he did not intend to kill the victim, but that she had struck appellant with a Cisco bottle, and the two had struggled and rolled in the broken glass. He further testified that during the struggle the victim got up, ran into a wall, and fell.

## PROCEDURAL BACKGROUND

**Trial, Conviction, and Sentence**

On December 8, 2011, an information was filed in the Superior Court of Kern County with first degree premeditated murder (§ 187, subd. (a)), with an enhancement for personal use of a deadly weapon, a knife, broken glass, and a hammer (§ 12022, subd. (b)(1)).

At appellant's trial, the court gave instructions on homicide (CALCRIM No. 500); justifiable homicide based on lawful self-defense (CALCRIM No. 505); excusable homicide based on accident or misfortune (CALCRIM No. 510); excusable homicide based on accident in the heat of passion (CALCRIM No. 511); murder, and express and implied malice (CALCRIM No. 520); first degree murder, premeditation, and second degree murder (CALCRIM No. 521); and the lesser offenses of voluntary and involuntary manslaughter and attempted murder and attempted manslaughter. (*People v. Huerta*, *supra*, F066497.) The jury was not instructed on the felony-murder rule, aiding

3.

and abetting, the natural and probable consequences doctrine relevant to aiding and abetting, or any underlying felonies as to murder.

As relevant to his petition in this case, CALJIC No. 520 defined murder and express and implied malice, and stated in relevant part:

> "The defendant acted with express malice if he unlawfully intended to kill.
>
> "The defendant acted with implied malice if:
>
> "1. He intentionally committed an act;
>
> "2. The natural and probable consequences of the act were dangerous to human life;
>
> "3. At the time he acted, he knew his act was dangerous to human life; AND
>
> "4. He deliberately acted with conscious disregard for human life."

CALCRIM No. 520 further stated:

> "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the other circumstances established by the evidence. [¶] There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death. A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death."

On December 5, 2012, the jury convicted appellant of second degree murder as a lesser included offense, and found he personally used a deadly or dangerous weapon, broken glass, in the commission of the offense. (*People v. Huerta*, *supra*, F066497.)

On January 10, 2013, the court sentenced appellant to 15 years to life for second degree murder plus one year for the personal use enhancement.

4.

**Appellant's First Appeal**

On October 23, 2014, this court filed the opinion that affirmed appellant's conviction and sentence. We rejected appellant's argument that there was insufficient evidence to establish the victim's death was caused by his actions:

> "In cases of homicide, criminal liability only attaches if the victim's death is the 'natural and probable consequence of a defendant's act[.]' (*People v. Roberts* (1992) 2 Cal.4th 271, 321.) On appeal, appellant asserts that there was insufficient evidence to establish that the victim's death was a natural or probable result of appellant's actions, as appellant struck the victim after she broke a bottle over his head, and appellant could not predict that the victim would then fall on the glass and die from rapid exsanguination.

> "This argument, however, is based on appellant's version of events and not on a review of the record in the light most favorable to the conviction that presumes the existence of every fact in support of the conviction the trier of fact could reasonably infer from the evidence. Using the appropriate standard of review, there was evidence presented that appellant and the victim were arguing before the victim's death, that the victim was overheard pleading with appellant, and that a bottle was broken during the argument. The evidence also showed the victim was subsequently found dead from exsanguination in a pile of broken glass, and that her hands had been tied and her eyes blindfolded by appellant. All of this evidence, viewed in the light most favorable to the conviction, is sufficient to establish that the victim's injuries and exsanguination were caused by appellant's actions.

> "Appellant also argues, however, that causation was not established at trial due to Dr. Shaker's testimony that it was equally compelling that the victim died due to the combination of alcohol and cocaine that was in her bloodstream, as it was that she died from exsanguination. While it is true that Dr. Shaker testified that he could not exclude cocaethylene poisoning as a cause of death with medical certainty, he also testified that he believed the victim's death was caused by exsanguination due to sharp injuries, that he assigned a high probability to that causation theory, and that it was the only cause of death he listed on his report.

> "Viewing this direct and circumstantial evidence in the light most favorable to the conviction, we find there was substantial evidence to support a finding that the victim's death was a natural or probable result of

5.

appellant's actions and to support appellant's conviction for second degree murder." (*People v. Huerta*, *supra*, F066497, at pp. 3–4.)

We also rejected appellant's argument that there was insufficient evidence to establish that appellant acted with express or implied malice:

> " 'Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.' (*People v. Knoller* (2007) 41 Cal.4th 139, 151.) 'Such malice may be either express or implied.' (… § 188.) '[W]hen it is proved that the defendant assaulted the victim with a deadly weapon in a manner endangering life and resulting in death, " 'malice is implied from such assault in the absence of justifying or mitigating circumstances." ' [Citation.]" (*People v. Lines* (1975) 13 Cal.3d 500, 506.)

> "Here, appellant argues that there was insufficient evidence to establish malice, as hitting the victim with his hands and struggling with the victim do not constitute an assault with a deadly weapon in a manner endangering life. In the alternative, appellant argues that striking the victim with a bottle is also insufficient to establish implied malice, as fatal exsanguination is not a foreseeable consequence of the infliction of superficial wounds.

> "With regard to the first claim, appellant again assumes his own version of events rather than viewing the evidence in the light most favorable to the conviction. Given the direct and circumstantial evidence supporting a finding that appellant struck the victim with a bottle, the prosecution was under no obligation to show that unarmed blows constituted an assault with a deadly weapon in a manner endangering life. Regarding the second claim, appellant's assertion that a glass bottle is not a deadly weapon is contradicted by applicable case law. In *People v. Cordero* (1949) 92 Cal.App.2d 196, 199, the First District Court of Appeal found that a glass bottle, when used as a club, is a deadly weapon. Further, Dr. Shaker's testimony established that exsanguination was a possible consequence of superficial wounds, and that the victim in this case did in fact die from such exsanguination.

> "Therefore, viewing this direct and circumstantial evidence in the light most favorable to the conviction, we find there was substantial evidence to support a finding that appellant acted with malice, and to support appellant's conviction for second degree murder." (*People v. Huerta*, *supra*, F066497, at pp. 5–6.)

6.

Finally, we rejected his claims that the trial court abused its discretion by precluding appellant from cross-examining the substitute pathologist about the original pathologist's autopsy conclusions; the trial court abused its discretion by finding evidence of the substitute pathologist's professional habits inadmissible; and the cumulative effect of the alleged errors warrants reversal of appellant's conviction.

## SENATE BILL NOS. 1437 & 775

The instant appeal is from the denial of appellant's petition for resentencing that he filed pursuant to Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), that was effective on January 1, 2019, and amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person *who is not the actual killer*, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*), italics added.)

"Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea

7.

offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' " (*Lewis, supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not … previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (*Lewis, supra*, 11 Cal.5th at p. 960.)

**Lewis**

In *Lewis*, the court interpreted the provisions of section 1170.95 and held that petitioners "are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Lewis, supra*, 11 Cal.5th at p. 957.) *Lewis* held the language of section 1170.95, subdivision (c) "is mandatory: 'If the petitioner has requested counsel, the court

*shall* appoint counsel to represent the petitioner.' " (*Lewis,* at p. 963, italics added in original.)  The court's failure to appoint counsel only constitutes state error subject to review under *People v. Watson* (1956) 46 Cal.2d 818.  (*Lewis,* at p. 973.)

*Lewis* also held that "at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra,* 11 Cal.5th at p. 974.)  When the court conducts the prima facie determination, section 1170.95, subdivision (b)(2) only permits screening out "noncomplying petitions, not petitions that lack substantive merit." (*Lewis,* at p. 968.)

*Lewis* further held that after appointing counsel, the trial court could rely on the record of conviction to determine whether the prima facie showing is made "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.)  The record of conviction includes a prior appellate opinion, although it will be case-specific. (*Id.* at p. 972.)  The prima facie finding under section 1170.95, subdivision (c) is limited, and the court must accept the petitioner's factual allegations as true and cannot reject the allegations on credibility grounds without conducting an evidentiary hearing. (*Lewis,* at p. 971.)  " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]  [T]he 'prima facie bar was intentionally and correctly set very low.' " (*Id.* at p. 972.)

**Senate Bill No. 775**

In October 2021, Senate Bill No. 775 was enacted and amended section 1170.95, effective on January 1, 2022. (2020–2021 Reg. Sess.; Stats. 2021, ch. 551, § 1.)  (Senate Bill 775.)  As a result of the amendments, section 1170.95 clarified that "persons

convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances.  (§ 1170.95, subd. (a).)

The amendments also codified the holding in *Lewis* that a petitioner has the right to appointment of counsel, if requested, prior to the court making the prima facie finding: "Upon receiving a petition in which the information required by this subdivision is set forth …, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).)  After appointment of counsel, the parties shall have the opportunity to submit briefing, and "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Id*. at subd. (c).)

If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.  If the court declines to issue an order to show cause, it shall provide a statement fully setting forth its reasons for doing so.  (§ 1170.95, subd. (c).)

If the court issues the order to show cause and conducts a hearing, the prosecution has the burden to prove beyond a reasonable doubt that petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189.  (§ 1170.95, subd. (d)(3).)  "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is

10.

admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid.*, as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)

## APPELLANT'S SECTION 1170.95 PETITION

On May 14, 2020, appellant filed a petition for resentencing pursuant to section 1170.95 and requested appointment of counsel.

The petition was supported by appellant's declaration, signed under penalty of perjury, where he checked boxes on a preprinted form that stated he was entitled to resentencing under section 1170.95 because a complaint or information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; he could not now be convicted of first or second degree murder under the amended versions to sections 188 and 189; and he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony-murder doctrine and could not now be so convicted under the changes to section 188.

On May 22, 2020, the superior court appointed counsel to represent appellant.

On July 21, 2020, appointed counsel filed points and authorities in further support of appellant's section 1170.95 petition. Counsel argued appellant had satisfied the prima facie showing of being entitled to relief because "the only theory that supports the conviction was that the death was a result of the natural and probable consequences of a dangerous, unlawful act," and asserted this court's opinion affirmed his conviction by finding that "the only theory that supports the conviction was that the death was a result of the natural and probable consequences of a dangerous, unlawful act by [appellant]."

11.

Based on this court's opinion from his first appeal, counsel concluded that his conviction was based on the natural and probable consequences doctrine, he had satisfied prima facie burden, and an order to show cause should be issued.

**The People's Opposition**

On July 30, 2020, the People filed opposition and argued that appellant was ineligible for relief because he was not prosecuted under the felony-murder rule or the natural and probable consequences doctrine. The People acknowledged that while "the appellate opinion does discuss the 'natural and probable consequences' of his homicidal acts, it does so only in the context of causation. The recent amendments to sections 188 and 189 deal with the natural and probable consequences doctrine as it relates to aider and abettor liability."

The People further argued the jury found appellant was the actual killer because it found he "personally used a deadly or dangerous weapon in the commission of the murder. [T]his is tantamount to a specific finding that he was the actual killer," and even appellant's own testimony did not suggest otherwise.

**The Court's Denial of the Petition**

On August 11, 2020, the court issued an order that denied appellant's petition for resentencing. On August 12, 2020, appellant timely filed a notice of appeal of the court's order.

**DISCUSSION**

As noted above, appellant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on April 1, 2021, we invited appellant to submit additional briefing. To date, he has not done so.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.[3]

## DISPOSITION

The judgment is affirmed.

---

[3] To the extent the trial court violated section 1170.95 by denying appellant's petition without holding a hearing, failing to give a statement of reasons when it declined to issue an order to show cause, and possibly engaging in premature factfinding at the prima facie stage (§ 1170.95, subds. (c), (d)(3)), we may affirm the court's order if petitioner was not prejudiced by the statutory errors. (*Lewis, supra*, 11 Cal.5th at pp. 972–974.) The petitioner must show it is reasonably probable that, absent the statutory error, the petition would not have been summarily denied without an evidentiary hearing. (*Ibid.*; *People v. Watson, supra,* 46 Cal.2d at p. 836.) The prima facie determination is a question of law, and the court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law. (*Lewis,* at p. 966.) The court may rely on jury instructions, which are part of the record of conviction, to make the prima facie determination. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, disapproved on another ground in *Lewis*, *supra*, 11 Cal.5th 952.)

Appellant was not eligible for resentencing as a matter of law because the jury instructions show that appellant was charged and convicted as the actual killer. The jury was instructed on first and second degree murder, express and implied malice, and defenses including justifiable homicide based on lawful self-defense, excusable homicide based on accident or misfortune, excusable homicide based on accident in the heat of passion, and lesser included offenses. The jury was not instructed on the felony-murder rule, aiding and abetting, imputed malice under the natural and probable consequences doctrine, or any underlying felonies as target and nontarget offenses.

Appellant's petition argued this court's opinion demonstrated he was convicted based on the natural and probable consequences doctrine. This court's prior opinion, however, addressed two different concepts raised by appellant in his appeal – implied malice and causation. Senate Bill 1437 eliminated natural and probable consequences liability for second degree murder based on *imputed* malice, but implied malice remains a valid theory of second degree murder. (*People v. Gentile*, *supra*, 10 Cal.5th at p. 850; *People v. Rivera* (2021) 62 Cal.App.5th 217, 232; *People v. Cortes* (2022) 75 Cal.App.5th 198, 201–202; *People v. Soto*, *supra*, 51 Cal.App.5th at pp. 1056–1057.) Similarly, principles of foreseeability and causation do not involve imputed malice and remain valid after Senate Bill 1437. (See, e.g., *People v. Cervantes* (2001) 26 Cal.4th 860, 871–872; *People v. Roberts* (1992) 2 Cal.4th 271, 321–322; *People v. Fiu* (2008) 165 Cal.App.4th 360, 371–372.)